IN THE UNITED STATES DISTRICT COURT FOR THE
WESTERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| JENIFER RENEE GAUCIN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | CIV-13-592-HE |
| v. ) | |
| ) | |
| CAROLYN W. COLVIN, ) | |
| Acting Commissioner of Social ) | |
| Security Administration, ) | |
| ) | |
| Defendant. ) | |

REPORT AND RECOMMENDATION

Plaintiff seeks judicial review pursuant to 42 U.S.C. § 405(g) of the final decision of Defendant Commissioner denying her application for supplemental security income benefits under Title XVI of the Social Security Act, 42 U.S.C. §§ 416(I), 1382. Defendant has answered the Complaint and filed the administrative record (hereinafter TR___), and the parties have briefed the issues. The matter has been referred to the undersigned Magistrate Judge for initial proceedings consistent with 28 U.S.C. § 636(b)(1)(B). For the following reasons, it is recommended that the Commissioner's decision be reversed and remanded.

I. Background

Plaintiff applied for benefits on September 8, 2009 (protective filing date) and alleged she became disabled on July 30, 2009, due to fibromyalgia, diabetes mellitus, depression, and irritable bowel syndrome. Plaintiff described previous work as a certified nurse's aid ("CNA"), clerk, and cashier. Plaintiff and her mother submitted function reports describing Plaintiff's

1

usual daily activities. Plaintiff also appeared at a hearing conducted November 2, 2011, before Administrative Law Judge McLean ("ALJ").

Plaintiff testified at the hearing that she was 26 years old, had a high school education, and completed CNA training. With respect to her fibromyalgia, Plaintiff described symptoms of pain "all over" that was constant but varied in severity, muscle tenderness and soreness, tingling in her fingers and toes, constant fatigue, inability to concentrate, and confusion. (TR 62). Plaintiff testified that she saw Dr. Cooper, a rheumatologist, for treatment of her fibromyalgia. Dr. Cooper prescribed medications that helped but did not relieve her pain and other symptoms.

She stated she had depression that was somewhat, but not totally, relieved with medication. She described anxiety or panic attacks caused by stress for which she took anti-anxiety medication. She stated that she had irritable bowel syndrome which came and went, osteoarthritis in her wrists, ankles, elbows, and shoulders, and restless leg syndrome. Plaintiff described side effects of her medications, including drowsiness, confusion, and inability to concentrate. She stated she had to lie down three to four times each day for about 15 minutes due to fatigue. She testified that Dr. Mefford was her family physician and treated all of her conditions.

A vocational expert ("VE") also testified at the hearing. The VE testified that a person with Plaintiff's vocational and educational history who could perform a limited range of sedentary work[1], and who could only perform simple tasks with routine supervision, have no

---

[1]The ALJ's hypothetical presented to the VE was for a person who could perform sedentary work and who could not climb ladders, ropes, or scaffolds, and could occasionally balance, kneel, crouch, crawl, and stoop.

2

public contact and no customer service, and could interact appropriately with supervisors and co-workers for superficial work purposes would not be able to perform any of Plaintiff's previous jobs. The VE testified that such an individual could, however, perform the jobs of microfilm/document preparer, tube operator, and addresser.

In an extensive "Multiple Impairment Questionnaire" dated February 22, 2011 (TR 609-616), Dr. Mefford stated that he had treated Plaintiff since July 31, 2009, and last saw her on January 13, 2011. Dr. Mefford opined that Plaintiff was diagnosed with fibromyalgia with clinical findings of 13 out of 18 tender trigger points, myalgias, widespread body pain, depression, fluid retention, significant fatigue, and interstitial nephritis. (TR 609). Dr. Mefford opined that Plaintiff's symptoms and functional limitations were reasonably consistent with her physical and emotional impairments, that she had constant pain and severe fatigue, and that she was capable of sitting for 2 hours and standing/walking for up to one hour in an 8-hour day, that she was not able to stand/walk continuously, that she could occasionally lift 10 pounds, that she would have significant limitations with repetitive reaching, handling, fingering, or lifting due to pain, that she was moderately limited in her abilities to use her hands and fingers for grasping objects or for fine manipulations, and she was moderately limited in her ability to use her arms for reaching, including overhead, that she frequently had pain limiting her ability to concentrate, that she was capable of only low stress activities, that she needed unscheduled breaks every 30 minutes, and that she would likely miss more than three days of work per month.

In a medical source statement dated September 2, 2011 (TR 665-670), Dr. Cooper stated that she began treating Plaintiff on December 14, 2010, that Plaintiff met the American

3

Rheumatological criteria for fibromyalgia and she also had inflammatory arthritis. (TR 665). Dr. Cooper stated the clinical findings supporting the diagnoses included elevated "CRP and ESR," widespread myalgic pain, and repeated, periodic episodes of severe fatigue and joint pain. (TR 665). Dr. Cooper noted she had prescribed five medications for Plaintiff, and she noted side effects of sedation and nausea with three of those medications.

Dr. Cooper opined that Plaintiff could sit for 4 hours and walk for 1 hour in an 8-hour day, could not sit continuously, could not walk continuously, could occasionally lift up to 20 pounds, was capable of only low stress work, would need to take three to four unscheduled breaks during the workday, and would likely be absent from work more than three days per month.

The ALJ issued a decision in December 2011 (TR 35-46) finding Plaintiff had severe impairments due to fibromyalgia, obesity, and depression. Despite these impairments, the ALJ found that Plaintiff was capable of performing sedentary work except that she could not climb ladders, ropes, or scaffolding, she could occasionally climb stairs or ramps, balance, kneel, crouch, crawl, or stoop, she could perform simple tasks with routine supervision, she could not have public contact or provide customer service, and she was able to interact appropriately with supervisors and coworkers for superficial work purposes. Relying on the VE's hearing testimony, the ALJ found that Plaintiff could not perform her past jobs. Again relying on the VE's hearing testimony, the ALJ found that Plaintiff was not disabled because she retained the capacity to perform jobs available in the economy, including the jobs of microfilm document preparer, tube operator, and addresser. The Appeals Council denied Plaintiff's request for

4

review, and therefore the ALJ's decision is the final decision of the Commissioner. See 20 C.F.R. § 416.1481; Wall v. Astrue, 561 F.3d 1048, 1051 (10th Cir. 2009).

II. Standard of Review

In this case, judicial review of the final Commissioner's decision is limited to a determination of whether the ALJ's factual findings are supported by substantial evidence in the record and whether the correct legal standards were applied. Wilson v. Astrue, 602 F.3d 1136, 1140 (10th Cir. 2010); Doyal v. Barnhart, 331 F.3d 758, 760 (10th Cir. 2003). "Substantial evidence is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion. It requires more than a scintilla, but less than a preponderance." Lax v. Astrue, 489 F.3d 1080, 1084 (10th Cir. 2007). The "determination of whether the ALJ's ruling is supported by substantial evidence must be based upon the record taken as a whole. Consequently, [the Court must] remain mindful that evidence is not substantial if it is overwhelmed by other evidence in the record." Wall, 561 F.3d at 1052 (citations, internal quotation marks, and brackets omitted).

III. Evaluation of Treating Doctors' Opinions

Plaintiff contends that the ALJ erred in evaluating the medical source opinions of her treating physicians, Dr. Mefford and Dr. Cooper. Defendant Commissioner responds that the ALJ properly considered and discounted the physicians' opinions.

When an ALJ considers the opinion of a disability claimant's treating physician, the ALJ must follow a specific procedure in analyzing the opinion. Generally, an ALJ must give the opinion of an acceptable treating source controlling weight if it is both well-supported by

5

medically acceptable clinical and laboratory diagnostic techniques and consistent with other substantial evidence in the record. Watkins v. Barnhart, 350 F.3d 1297, 1300 (10th Cir. 2003) (quoting SSR 96-2p, 1996 WL 374188, at *2).

Where an ALJ finds that a treating physician's opinion is not entitled to controlling weight, the ALJ must decide "whether the opinion should be rejected altogether or assigned some lesser weight." Pisciotta v. Astrue, 500 F.3d 1074, 1077 (10th Cir. 2007). "Treating source medical opinions not entitled to controlling weight 'are still entitled to deference' and must be evaluated in light of the factors in the relevant regulations, 20 C.F.R. §§ 404.1527 and 416.927." Newbold v. Colvin, 718 F.3d. 1257, 1265 (10th Cir. 2013)(quoting Watkins, 350 F.3d at 1300).

In the ALJ's decision, the ALJ recognized that both Dr. Mefford and Dr. Cooper had provided medical source statements assessing Plaintiff's residual functional capacity ("RFC") for work. The ALJ summarized the statements and then reached identical conclusions that each opinion was given "minimal weight as the claimant's admitted activities of daily living exceed these limitations." (TR 44).

The ALJ's conclusion did not follow the well-established procedure required for the evaluation of treating doctors' opinions. The ALJ did not assess whether the opinions were supported by medically acceptable clinical and laboratory diagnostic techniques. The ALJ merely concluded that the opinions were not consistent with Plaintiff's subjective statements concerning her usual daily activities, and the ALJ did not explain which of those activities she found were not consistent with the treating physicians' opinions. In their medical source statements, both of the physicians provided objective clinical findings to support their medical

6

opinions concerning Plaintiff's ability to work and their treatment notes appear in the record.

The Commissioner points to the ALJ's summary in the decision of the physicians' medical source opinions and posits that the summary itself provides adequate reasons for discounting the physicians' opinions. But the ALJ did not provide any explanation for discounting the opinions other than the unsupported reference to Plaintiff's "admitted activities of daily living" which the ALJ concluded "exceed[ed] these limitations." (TR 44). The absence of an explanation does not provide an explanation. The Commissioner's argument pointing to other parts of the ALJ's decision cannot substitute for the missing analysis. The ALJ's error warrants a reversal of the Commissioner's decision and a remand to allow the Commissioner the opportunity to correct the error.

IV. Credibility

Plaintiff contends that the ALJ provided "insufficient" reasons for discounting Plaintiff's credibility. "Credibility determinations are peculiarly within the province of the finder of fact, and [courts] will not upset such determinations when supported by substantial evidence." Diaz v. Secretary of Health & Human Servs., 898 F.2d 774, 777 (10th Cir. 1990). In assessing a claimant's credibility at step four, the ALJ must "consider the entire case record and give specific reasons for the weight given to the individual's statements." SSR 96-7p, 1996 WL 374186, at * 4 (1996). Credibility findings must "be closely and affirmatively linked to substantial evidence and not just a conclusion in the guise of findings." McGoffin v. Barnhart, 288 F.3d 1248, 1254 (10th Cir. 2002)(quotations and alteration omitted).

An ALJ is not, however, required to conduct a "formalistic factor-by-factor recitation of

7

the evidence." Qualls v. Apfel, 206 F.3d 1368, 1372 (10th Cir. 2000). Employing "common sense" as a guide, the ALJ's decision is sufficient if it "sets forth the specific evidence he [or she] relies on in evaluating the claimant's credibility." Id.; Keyes-Zachary v. Astrue, 695 F.3d 1156, 1167 (10th Cir. 2012).

The ALJ expressly evaluated Plaintiff's credibility, pointing to appropriate factors used in analyzing the credibility of a claimant's allegation of disabling pain and limitations. The ALJ reasoned that Plaintiff's daily activities, which the ALJ summarized, were not "limited to the extent one would expect" given her subjective allegations of disabling symptoms and limitations. The ALJ also pointed to the consultative examiner Dr. Abraham's report concerning Plaintiff's largely normal functional abilities, to the Plaintiff's medications and her reports that her medications were relatively effective in controlling her symptoms, including depression symptoms, to the fact that she took one prescribed pain medication, and to the fact that her medical treatment for her allegedly disabling impairments was "essentially routine" and conservative in nature.

The ALJ noted that Plaintiff's allegedly disabling impairments had been present at about the same level of severity while she was working, indicating the impairments would not prevent her from working after her alleged onset date. All of these factors have been recognized as important in the analysis of a claimant's credibility. See Kepler v. Chater, 68 F.3d 387, 391 (10th Cir. 1995)(noting factors that may be relevant to credibility determination include claimant's "medication[s] and [their] effectiveness, extensiveness of the attempts (medical or nonmedical) to obtain relief, the frequency of [the claimant's] medical contacts, the nature of [the claimant's]

8

daily activities, subjective measures of credibility that are peculiarly within the judgment of the ALJ, . . . and the consistency or compatibility of nonmedical testimony with objective medical evidence"). See also SSR 96-7p, 1996 WL 374186, at * 3; 20 C.F.R. § 416.929(c)(3)(listing factors relevant to symptoms that may be considered by ALJ).

Curiously, the ALJ recognized while discussing Plaintiff's credibility that the criteria of the American College of Rheumatology ("ACR") for diagnosing fibromyalgia required 11 or more of 18 specific tender points and that Plaintiff's treating registered nurse practitioner, Kendra Dean, had noted she that Plaintiff exhibited only 10 of 18 tender points (citing Exhibit 16F at 6). (TR 42). The ALJ found, however, that Plaintiff had a severe impairment due to fibromyalgia, and the ALJ did not explain why Ms. Dean's finding was relevant. Nor did the ALJ recognize that Dr. Mefford noted in his medical source statement that he found Plaintiff "positive for 13 out of 18 tender points" (TR 609) and that Dr. Cooper noted in her medical source statement that Plaintiff met the ACR criteria for fibromyalgia. (TR 665). This inconsistency does not, however, detract from the relevant and otherwise thorough discussion in the decision of the ALJ's reasons for discounting Plaintiff's credibility. Those reasons are well supported by the record, and no error occurred in this respect.

## RECOMMENDATION

In view of the foregoing findings, it is recommended that judgment enter REVERSING the decision of the Commissioner to deny Plaintiff's application for benefits and REMANDING the case for further administrative proceedings. The parties are advised of their respective right

to file an objection to this Report and Recommendation with the Clerk of this Court on or before ___April 21st___, 2014, in accordance with 28 U.S.C. §636 and Fed. R. Civ. P. 72. The failure to timely object to this Report and Recommendation would waive appellate review of the recommended ruling. Moore v. United States, 950 F.2d 656 (10th Cir. 1991); cf. Marshall v. Chater, 75 F.3d 1421, 1426 (10th Cir. 1996)("Issues raised for the first time in objections to the magistrate judge's recommendation are deemed waived.").

This Report and Recommendation disposes of all issues referred to the undersigned Magistrate Judge in the captioned matter, and any pending motion not specifically addressed herein is denied.

ENTERED this ___1st___ day of ___April___, 2014.

*[signature: Gary M. Purcell]*
GARY M. PURCELL
UNITED STATES MAGISTRATE JUDGE